# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BOBBY LOUIS PECK, | ) |
|     Plaintiff, | ) ) ) |
| v. | )    CAUSE NO.: 3:06-CV-226-TS |
| CHARLES E. WHELAN, JAMES L. CADWELL, JASON P. NOWATZKE, BESSIE E. LEONARD, ERNESTO DELAO, JOHN C. COSICH, KYLE R. MOORE, LARRY A. LUDWIG, RONDLE ANDERSON, DANIEL BODLOVICH, EDWIN BUSS, ROBERT ROOSE, WILLIAM H. WILSON JAMES WYNN, DONALD M. BATES, FARSHAWNA L. CROOK, CECIL K. DAVIS, KRISTINA J. McCARTY, BARBARA L. ROSEBOROUGH, and HOWARD WILSON[1], | ) ) ) ) ) ) ) ) ) ) |
|     Defendants. | ) |

## OPINION AND ORDER

Before the Court are cross-motions for summary judgment on the retaliation claim of Plaintiff Bobby Louis Peck, a prisoner proceeding *pro se* in this 42 U.S.C. § 1983 lawsuit against nineteen[2] Defendants, who are officials and staff at the Indiana Department of Corrections.

## BACKGROUND

On March 29, 2006, Peck signed his original Complaint [DE 1]. On April 3, he filed it with the Clerk of this Court along with an *In Forma Pauperis* Petition [DE 3]. He was denied leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(g) because he had on three

---

[1] It appears that Howard Wilson and William H. Wilson are the same person, and the Plaintiff misnamed Howard as William. (*See* Notice of Appearance, DE 75.) The Court will review the claims made against William H. Wilson as if they were also made against Howard Wilson.

[2] There are nineteen Defendants, not twenty (as listed in the caption), because the Plaintiff incorrectly named Howard Wilson as William H. Wilson. *See* note 1, *supra*.

prior occasions filed a meritless complaint or appeal. After paying the filing fee, he subsequently filed two amended complaints [DE 17, 20]. On January 17, 2007, the Court screened the Second Amended Complaint and granted Peck leave to proceed against the nineteen Defendants solely on his claims of retaliation, which remain at issue with these summary judgment motions. (Opinion and Order, DE 22.)

On December 19, 2007, the Defendants filed a Motion for Summary Judgment [DE 76]. In compliance with Northern District of Indiana Local Rule 56.1(e), the Defendants included a *Timms*[3] notice informing the *pro se* Plaintiff of his obligations. (*See* Mot. for Summ. J. 2–4.) On December 26, the Plaintiff filed a Motion for Summary Judgment [DE 98]. On May 9, 2008, the Plaintiff filed a document that he entitled "Motion in Opposition to Defendant's Motion for Summary Judgment," [DE 112], which is actually his Response and will be referred to as such. On May 27, the Defendants filed their Reply [DE 116].

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The party seeking summary

---

[3] *Timms v. Frank*, 953 F.2d 981 (7th Cir. 1992).

judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Rule 56(e)(2), a party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The evidence the nonmovant relies on must be identified with reasonable particularity and must be "competent evidence of a type otherwise admissible at trial." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996); *see also Powers v. Dole*, 782 F.2d 689, 696 (7th Cir. 1986) (stating that when evidence is offered through exhibits on a summary judgment motion, those exhibits "must be identified by affidavit or otherwise admissible"). If appropriate, summary judgment should be entered against a party who fails to so respond. Fed. R. Civ. P. 56(e)(2); *see also Celotex*, 477 U.S. at 322 (holding that a court should enter summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A material fact must be outcome determinative under the governing law. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000). Although a bare contention that an issue of fact exists is not sufficient to create a factual dispute, the court must construe all facts in a light most

3

favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). Pursuant to local rule, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

When cross-motions for summary judgment are filed, courts "look to the burden of proof that each party would bear on an issue of trial; [courts] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 324.)

"The contention of one party that there are no issues of material fact sufficient to prevent the entry of judgment in its favor does not bar that party from asserting that there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against it." *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 313 (2d Cir. 1981), quoted in *Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984). "It is true that cross-motions for summary judgment do not waive the right to a trial, but this rule does not alter the respective burdens on cross-motions for summary judgment—more particularly here, the responsive burden of a plaintiff who moves for summary judgment and is confronted with a cross-motion for summary judgment. The motions are treated separately." *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008) (citations omitted). In other words, even if plaintiffs filed their own motion for summary judgment, that does "not relieve them of their burden as the nonmovants relative to the defendant's motion for summary judgment." *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 603

4

(7th Cir. 1989). In that situation, the plaintiffs are "required to set forth specific facts showing why summary judgment on behalf of the defendants was not appropriate." *Id.*

While *pro se* pleadings are given liberal construction, procedural rules and requirements apply to *pro se* cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001) ("The essence of liberal construction is to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable. However, a lawsuit is not a game of hunt the peanut.")

## STATEMENT OF FACTS

On February 24, 2004, Peck testified during the civil rights trial of fellow inmate Anthony Smith. In *Smith v. Davis*, 3:02-CV-233 (N.D. Ind. filed April 3, 2002), Charles E. Whelan was a defendant, and the jury found him not liable to Smith. Whelan is also a Defendant in this case. Peck alleges that Whelan is the central figure in a far-ranging effort to punish Peck for testifying against Whelan during that prior trial. In his declaration, Peck recounts numerous details about his disciplinary write-up, his hearing, his successful appeal resulting in a remand and rehearing, the rehearing, and his second, successful appeal resulting in the dismissal of the charges against him. After the administrative process ended, Peck alleges that he was retaliated against by being placed in department-wide administrative segregation and denied contact visitation.

## DISCUSSION

The Seventh Circuit states that in order to

> prevail on a First Amendment retaliation claim, [Peck] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action.

*Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted). That third element "is the element of causation. [The Plaintiff] must show a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 552 (7th Cir. 2008) (quotation marks omitted). At the pleading stage of this proceeding, the Court accepted Peck's allegations as true, but in response to a motion for summary judgment Peck is required to bring forth admissible evidence to support his allegations—it is not enough to merely contend that events happened.

### A.   Claims Against Charles E. Whelan

Peck asserts that Whelan engaged in three retaliatory acts. First, he alleges that Whelan retaliated against him by writing and prosecuting a false disciplinary charge against him. Second, he alleges that Whelan continued prosecuting the same false disciplinary charge when it was remanded for a new hearing. Third, he alleges that Whelen was involved in administrative punishments against him after the second finding of guilt was set aside.

The Court will address these three allegations in reverse order. In support of his third alleged act of retaliation, Peck states in his declaration:

> It is my contention that . . . Whelan initiated an [*sic*] third act of retaliation against me, by submitting false and fraudulent claims of me being a gang member involved in security threat group activities, and fraudulently claiming that I have a history of being heavily involved in drug trafficking, and by . . . discriminatorily placing me on department wide administrative segregation . . .. See Exhibit(s) marked (10-B), (20), (20-A)[.]

6

[Pl. Aff., DE 98-2 at 8–9][4] (emphasis in original). None of these exhibits demonstrate that Whelan was involved in any way. Exhibit 10-B is Executive Directive #03-57 issued by Commissioner Evelyn Ridley-Turner on December 17, 2003. (DE 98-5 at 3.) This exhibit makes no mention of Whelan and does not support the claim that Whelan was involved in reporting any activity by Peck or placing him in segregation. Exhibit 20 is the Report of Classification Hearing dated September 9, 2005, to which is attached Peck's Offender Information System Conduct Summary, dated October 29, 2007. (DE 98-10 at 1–5.) The Classification Hearing Report was signed by four correctional officials, but not by Whelan, and the document does not mention Whelan. The Conduct Summary is a four-page computer printout listing twelve disciplinary offenses including attempted murder, possessing a dangerous weapon (twice),and possessing or using an unauthorized substance and attempted murder (twice). The Report does not include the overturned trafficking offense nor does it include any reference to Whelan. Exhibit 20-A is the Classification Committee Recommendation [DE 98-10 at 6]. This report does not mention Whelan, nor is it signed by him. Peck contends that Whelan's involvement with his placement on administrative segregation is the third act of retaliation, but he has provided nothing to substantiate this contention. *See Palmer v. Marion County*, 327 F.3d 588, 593–94 (7th Cir. 2003) (stating that liability under § 1983 can only be based on a finding that the defendant caused the deprivation at issue); *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co.*, 544 F.3d 752, 757 (7th Cir. 2008) ("[M]ere speculation or conjecture will not defeat a summary judgment motion." (quoting *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003))).

---

[4] Peck has submitted the same document with his declarations and contentions in support of his Motion for Summary Judgment [DE 98] and in support of his Motion In Opposition [DE 112] (which is actually his Response). (*See* Affidavit, DE 98-2, Declaration, DE 113.) For the sake of clarity and because he has attached exhibits only to the former, the Court will cite solely to his Affidavit [DE 98-2].

In support of his second alleged act of retaliation, Peck alleges that Whelan continued prosecuting the same false disciplinary charge when it was remanded for a new hearing. Although Peck tries to characterize the two disciplinary hearings as separate acts of retaliation, there was only one disciplinary charge. The rehearing was not a new case or a distinct act of retaliation. Instead, the rehearing was merely a continuation of the allegedly false conduct report for trafficking.

Because Peck's allegation against Whelen is now limited to a single, dismissed, retaliatory conduct report, he cannot state a claim with this matter because the Seventh Circuit has said that a "single retaliatory disciplinary charge that is later dismissed," like it was here, "is insufficient to serve as the basis of a § 1983 action." *Bridges*, 557 F.3d at 555 (finding that the plaintiff's retaliation claim made on this basis was properly dismissed). Thus, even if Peck could demonstrate that Whelan wrote the disciplinary charge in retaliation for having testified against him, this evidence would be insufficient to establish liability under 42 U.S.C. § 1983. Therefore, summary judgment must be granted in favor of Whelan and against Peck.

**B.     Claims Against Barbara L. Roseborough, Farshawna L. Crook, Jason P. Nowatzke, James L. Cadwell, Bessie E. Leonard, Ernesto Delao, Kristina J. McCarty, Donald M. Bates, John C. Cosich, Larry A. Ludwig, and Kyle R. Moore**

Peck alleges that Barbara L. Roseborough, Farshawna L. Crook, Jason P. Nowatzke, James L. Cadwell, Bessie E. Leonard, Ernesto Delao, Kristina J. McCarty, Donald M. Bates, John C. Cosich, Larry A. Ludwig, and Kyle R. Moore retaliated against him when they participated in misprocessing the disciplinary charge filed by Whelan. The analysis of these claims is not materially different than the analysis of the retaliation claim against Whelan. This

group of Defendants, like Whelan, are each alleged to have participated in a single retaliatory disciplinary charge that was later dismissed. However, as previously discussed, a "single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." *Bridges*, 557 F.3d at 555. Thus, even if Peck could demonstrate that any or all of these eleven Defendants retaliated against him by misprocessing the disciplinary charge, this evidence would be insufficient to establish liability under 42 U.S.C. § 1983. Therefore, summary judgment must be granted in favor of Barbara L. Roseborough, Farshawna L. Crook, Jason P. Nowatzke, James L. Cadwell, Bessie E. Leonard, Ernesto Delao, Kristina J. McCarty, Donald M. Bates, John C. Cosich, Larry A. Ludwig, and Kyle R. Moore; and against Peck.

### C.     Claims Against William H. Wilson, Robert Roose, Daniel Bodlovich, Edwin Buss, James Wynn, Rondle Anderson, Cecil K. Davis, and Howard Wilson

Peck alleges that William H. Wilson, Robert Roose, Daniel Bodlovich, Edwin Buss, James Wynn, Rondle Anderson, Cecil K. Davis, and Howard Wilson retaliated against him by placing him in department-wide administrative segregation and denying him contact visitation. In support of these claims and in relation to each of these Defendants, Peck states his "contention[s]" in paragraphs 25 through 32 of his declaration. [DE 98-2 at 9–12]. He also cites to Exhibits 9, 10-B, 21, 21-A, 22, 23, 24, 24-A, 24-B, 24-C, 24-D, 25, 25-A, 25-B, 25-C, 25-D, 25-E, and 25-F. None of these exhibits demonstrate that any of these Defendants acted with retaliatory animus and conclusory statements of belief, like the ones made by Peck, are insufficient to survive summary judgment. *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (stating that affidavits presented during summary judgment must be based on personal knowledge).

Exhibit 9 is Executive Directive #05-39 issued by Commissioner J. David Donahue on November 3, 2005 [DE 98-4 at 1–2] and Policy and Administrative Procedure 00-02-301 [DE 98-4 at 3–34]. Exhibit 10-B is Executive Directive #03-57 issued by Commissioner Evelyn Ridley-Turner on December 17, 2003 [DE 98-5 at 3]. Exhibit 21-A is the Adult Offender Classification Policy 01-04-101, its appendices, sample forms, and memos amending the policy [DE 98-11, 98-12, 98-13, 98-14, 98-15, and 98-16]. Exhibit 22 is Executive Directive #05-11 issued by Commissioner J. David Donahue on April 12, 2005 [DE 98-17]. None of these policies, forms, memos, or directives prove retaliation or provide any evidence that these Defendants acted in response to the Plaintiff's First Amendment activity.

Exhibit 21 is a Report of Inter-Facility Transfer [DE 98-10 at 7]. Exhibit 23 is a Report of Classification Hearing dated February 14, 2006 [DE 98-18 at 1]. Exhibit 24, 24-A, and 24-B are three Classification Designations [DE 98-18 at 2–4]. Exhibit 24-C is a memorandum from the Supervisor of Classification, Daniel Bodlovich, notifying Peck that the Classification Division approved his placement on department wide administrative segregation and informing him of the procedure for appealing that decision [DE 98-18 at 5]. Exhibit 24-D is the same Report of Inter-Facility Transfer as Exhibit 21, with signatures in the central office section of the form [DE 98-18 at 6]. Exhibit 25 is a Modification of Visiting Privileges dated April 8, 2005, limiting Peck to non-contact visitation [DE 98-19 at 1]. Exhibit 25-B is a letter from L. A. VanNatta modifying Peck's non-contact visitation restriction from permanent to twelve months [DE 98-19 at 3]. Exhibit 25-E is a letter from Buss [DE 98-19 at 6]. None of these reports, memorandums, or letters admit to, or even hint at, retaliation against Peck.

Exhibit 25-A is a grievance filed by Peck [DE 98-19 at 2]. Exhibit 25-C and 25-D are letters from Peck to Superintendent Buss [DE 98-19 at 4–5]. Exhibit 25-F is a letter from Peck to C. A. Penfold. [DE 98-19 at 7]. These exhibits were all written by Peck. As such, they are nothing more than his own claims or assertions, and "mere speculation or conjecture will not defeat a summary judgment motion." *Rockwell Automation*, 544 F.3d at 757. All Peck has in support of his claim that these Defendants acted against him in retaliation is his own "contention" that they did. Therefore, summary judgment must be granted in favor of William H. Wilson, Robert Roose, Daniel Bodlovich, Edwin Buss, James Wynn, Rondle Anderson, Cecil K. Davis, and Howard Wilson; and against Peck.

D.     **Peck's Cross-Motion for Summary Judgment**

Because all of the Defendants having prevailed on their Motion for Summary Judgment, Peck's Cross-Motion for Summary Judgment, which the Court reviewed and which must surmount a burden higher than his response to the Defendants' Motion, must be denied. *McKinney*, 548 F.3d at 504 n.4; *Chromalloy Am. Corp.*, 877 F.2d at 603 (stating that even if a plaintiff has filed his own motion for summary judgment, that does "not relieve [him] of [his] burden as the nonmovant[] relative to the defendant's motion for summary judgment.")

**CONCLUSION**

For the foregoing reasons, the Court:

(1) GRANTS the Defendants' Motion for Summary Judgment [DE 76];

(2) DENIES the Plaintiff's Motion in Opposition [DE 112];

(3) DENIES the Plaintiff's Motion for Summary Judgment [DE 98]; and

(4) DIRECTS the Clerk to enter judgment accordingly.

SO ORDERED on July 17, 2009.

                                              s/ Theresa L. Springmann
                                             THERESA L. SPRINGMANN
                                             UNITED STATES DISTRICT COURT
                                             FORT WAYNE DIVISION